UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY & AMII KENNEDY, BRUCE LEVINE & DANIEL MCCORKLE, GARY & CAROLYN SINGER, and ANTHONY & JEAN MARIE TILFORD | ) ) ) ) ) | **FILED: AUG. 07, 2008 08CV4462 JUDGE ST. EVE MAGISTRATE JUDGE MASON** |
| Plaintiffs, | ) ) | No. |
| vs. | ) ) ) | **AEE** |
| AMERIQUEST MORTGAGE COMPANY and DEUTSCHE BANK NATIONAL TRUST COMPANY | ) ) ) ) ) | JURY TRIAL DEMAND |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs seek rescission of their mortgage transactions pursuant to 15 U.S.C. § 1635.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest before Judge Aspen.

## PARTIES

4. Plaintiffs Randy and Amii Kennedy obtained a $107,617.00 adjustable rate mortgage from Ameriquest that closed on October 29, 2005. The loan had an initial interest rate of 8.300% which could adjust to a maximum rate of 14.300%. The Kennedys paid $6,137.67 in points and fess to obtain this loan, of which $4,552.67 went to Ameriquest.

5. Plaintiffs Bruce Levine and Daniel McCorkle obtained a $148,000 fixed rate mortgage from Ameriquest that closed on August 16, 2005. The loan had a fixed rate of 6.550%. Levine & McCorkle paid $11,688.90 in points and fess to obtain this loan, of which $6,143.48 went to Ameriquest.

6. Plaintiffs Gary & Carolyn Singer obtained a $240,000 adjustable rate mortgage from Ameriquest that closed on August 24, 2005. The loan had an initial interest rate of 7.250% which could adjust to a maximum rate of 13.250%. The Singers paid $15,350.37 in points and fess to obtain this loan, of which $11,461.47 went to Ameriquest.

7. Plaintiffs Anthony & Jean Marie Tilford obtained a $240,000 adjustable rate mortgage from Ameriquest that closed on August 24, 2005. The loan had an initial interest rate of 6.600% which could adjust to a maximum rate of 12.600%. The Tilfords paid $11,984.39 in points and fess to obtain this loan, of which $9,808.09 went to Ameriquest.

8. Defendant Ameriquest Mortgage Company is a corporation organized under the laws of the state of Delaware, with its principal place of business in Orange, CA. Ameriquest originated plaintiffs' mortgages through a refinancing transaction and took a security interest in plaintiffs' homes.

9. Defendant Deutsche Bank National Trust Company is or was the assignee of plaintiffs' mortgages.

## COUNT ONE -- TRUTH IN LENDING ACT

10. Plaintiffs incorporate paragraphs one through nine above.

11. Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth

in Lending Act. To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

12. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

13. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

14. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

15. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of

their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

16. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

17. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

18. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the

consumer's rescission rights. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
>> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>>
>> (ii) The consumer's right to rescind the transaction.
>>
>> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>>
>> (iv) The effects of rescission, as described in paragraph (d) of this section.
>>
>> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

19. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

20. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

21. The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

5

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

12 C.F.R. part 226 Supp.I para. 23(d)(2)-1.

## TILA DISCLOSURE VIOLATIONS

22. Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient as follows:

23. The Notice of Right to Cancel form that was delivered to Randy and Amii Kennedy at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). Moreover, Ameriquest only delivered one copy of the Notice of Right to Cancel form to the Kennedys, which is a separate violation of TILA. See 12 C.F.R. § 226.23(b)(1).

24. Also, the Kennedys were given a document (APPLICATION DISCLOSURE) which indicated that they would owe $300 for an Appraisal/Property Valuation Fee Deposit if they backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).

25. On January 16, 2008, the Kennedys sent a rescission request to Ameriquest and Deutsche Bank National Trust Company.

26. The Notice of Right to Cancel form that was delivered to Bruce Levine and Daniel McCorkle at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).

27. On June 28, 2008, Levine and McCorkle sent a rescission request to Ameriquest and Deutsche Bank National Trust Company.

28. At the closing their August 2005 loan, the Singers were given Notice of Right to Cancel

forms based on the Federal Reserve Board's Model H-8 form and not the Model H-9 form required for borrowers refinancing with the same lender.

29. In addition, Mr. Singer was misinformed as to the cost of credit and payment schedule. Mr. Singer was told by Ameriquest that he would be getting an adjustable rate mortgage with an initial interest rate of 4% that would go to 1% over prime after three years. In fact, the Singers received an adjustable rate mortgage with an initial interest rate of 7.250% which could adjust to a maximum rate of 13.250%.

30. On August 7, 2008, the Singers sent a rescission request to Ameriquest and Deutsche Bank National Trust Company.

31. The Notice of Right to Cancel form that was delivered to Anthony and Jean Marie Tilford at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).

32. In addition, Mrs. Tilford was misinformed as to the cost of credit and payment schedule. Mrs. Tilford was told by Ameriquest that she would be getting fixed rate mortgage with an interest rate at 6% or 6.1%. In fact, the Tilfords received an adjustable rate mortgage with an initial interest rate of 6.600% which could adjust to a maximum rate of 12.600%.

33. On July 21, 2008, the Tilfords sent a rescission request to Ameriquest and Deutsche Bank National Trust Company.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

    a.    canceling defendants' security interest in plaintiffs' homes and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

    b.    awarding the plaintiffs actual and statutory damages;

    c.    ordering defendants to pay costs, penalties, and attorneys fees;

    c.    awarding the plaintiffs actual and statutory damages;

Respectfully Submitted By:

/s/ Anthony P. Valach, Jr
Counsel for Plaintiffs

THE LAW OFFICES OF DANIEL HARRIS
Daniel Harris
Anthony Valach
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936